Next case, please. 116-3414, F.M. Chambers. This is a case filed in the Courtship Corporation. Counsel, you may proceed. Thank you, Your Honor. Good morning, Your Honor. My name is Jerome Irvick, and I represent the petitioner appellant in this case, Edna Chambers. What we have here is a tale of two impacts. The first impact being when a chunk of asphalt flew out of an asphalt grinder and struck the petitioner, Edna Chambers, in the leg. The second impact followed a split second later when she went down, landing on her left knee. Now, this Court should, one, reverse the decision of the Commission, because the Commission's decision that these two impacts had no positive link with Edna's current condition of ill-being is against the manifest way of the evidence. And why would that be? Because, Your Honor, what the Commission did is ignore one of the impacts to the expense of the other. Basically, the problem started with a conflict in the testimony between Sandra Hackney, who was a co-employee, eyewitness to the incident, and the petitioner herself. Ms. Hackney testified that the piece of asphalt struck her in the shin. And then at trial, this came up before the arbitrator, and when Edna was asked, she said that the piece of asphalt struck her in the knee, either the side or the back or different parts of the leg. What about the conclusion of the testimony before the arbitrator, who had some problems with the claimant's testimony? Is the true claimant acknowledged having the giant gnat on her left shin? Absolutely, Your Honor. Okay. So how does that jive with being struck in the knee? The point is, and this is the point that the Commission missed, is it doesn't matter where she was struck, because both eyewitnesses agreed that she went down. And when she went down, she hit her knee on the pavement. And Dr. Schnell testified that that would be a cause of the current condition of ill-being. Well, wouldn't she know if she was struck in the shin or the knee? Your Honor, she, I wasn't asking. She didn't say she wasn't. She said she was struck in the knee. She didn't, Your Honor. Right. Okay. The eyewitness says the shin and all of the injury, the swelling, the injury, would seem to be in the shin. That's where the gnat was. So I think the arbitrator and the Commission had a problem with that. It did. It had two big problems, and that is the problem, because what they did is they focused exclusively, one almost hesitates to say punitively, on their determination that Edna's testimony that she was struck in the knee was not correct. And instead focused on, and in doing so, ignored the undisputed testimony on the record for both Edna and Senator Hackney, that she went down on one knee and hit her knee. All right. Here's something else that troubled him, and I think this is a major issue that you need to address. According to the testimony and the claimant's testimony, she continued to work full time after the accident and did not seek any medical care until almost four months after this serious accident. Yes, and that is a problem, because as Dr. Schmelt or Mel, I think it was Schmelt, explained, this particular type of injury is one that starts out asymptomatic. You don't necessarily feel anything at first, and as time goes by, it gets more painful and more painful and more painful. But you're able to work for four months straight without ever going to a doctor at all? Your Honor, I've got a shoulder pain that I've been pointedly known for two years. I'll go to the doctor tomorrow, I assure you. But people have this human nature. People don't necessarily always go to the doctor when they show up. Yeah, but this is a physically demanding job. She's standing up all the time, all right? I mean, this is somebody who isn't a sedentary person, and yet no doctors for four months? That's how long it took for the pain to escalate to the point where it got her to the doctor. I mean, that's not unheard of, and it's something that Dr. Schmelt said was consistent with this kind of injury. And I agree it's an issue, but I don't think it's an issue that goes to the cross of this case, which is the causal link between the second impact, the drop to the knee, and the current condition of ill-being. It goes perhaps to her credibility. It goes perhaps to the first impact, which is the one that the Commission focused on and the one that there was disputed testimony over. Well, when you mention credibility, I mean, isn't the Commission the sole judge of the credibility of the witness and the weight to be given to the testimony? What if they're troubled by the claimant's testimony? In this case, it doesn't matter, Your Honor, with respect to the second impact because they've also got the testimony of Sandra Hackney that she went down on her knee. There's no disputing that she went down on her knee. That's her testimony. The Commission doesn't believe her. They presumably believe Sandra Hackney, and there's no evidence to the contrary. Oh, so if the Commission, the testimony is very clear, the claimant says she struck in the knee, Hackney, a few feet away, says it was the shin, then the fact that she went down on her knee means that the Commission should ignore the claimant's testimony that she was struck in the knee by the concrete. It doesn't mean they should ignore it. They should just ignore it. They should say no harm, no foul because she did actually bend down on her knee. I'm sorry. They should say no harm, no foul because even though she said it was a blow to her knee, even if it wasn't, it's okay because she bent down on her knee. Yes, Your Honor. That is exactly. That seems to be your argument. What's that? Yes, that seems to be your argument. It is because what we're doing is we're dealing with two different positive factors. This is a mistake the Commission made. They inflated the two as one positive factor when we have two positive factors, and as this Court said in Tolbert v. Commission and again in Gross v. Commission, when you have a Commission delimiting one positive factor and ignoring another, then that's grounds for reversal. In Tolbert, we had a case where an employee was exposed to bird droppings, but he also happened to be a very heavy smoker. You had disagreed medical experts. One said it was the smoking. One said it was the bird droppings, and the Commission said, well, the guy who said it was the smoking didn't say the bird droppings were irrelevant. Therefore, the petition, the bird droppings could be a second positive factor. So from here, Dr. Bowdoin says that the impact was not a positive factor, and he addresses the fault briefly on page 21 of his deposition. I don't remember the record site number. I apologize. But other than noting the fact that she had a fault, he doesn't say the fault could have been a positive factor. I think Tolbert is distinguishable from this case. I, like the expert in Tolbert, Levin, did not rule out Klayman's accident as a cause for a condition of well-being. This case could involve multiple causes, some compensable, some not. So really Tolbert is not on point. It is on point, Your Honor, because, again, even though Tolbert involved cases that had some compensable causes and some not, here we have a cause which is not compensable because the Commission just doesn't believe it, and that finding we do have to refer to, and another one which the Commission doesn't address, but which could be a compensable. So we still have this dichotomy of compensable, not compensable. The only thing that's different is the reasoning that not compensable is not compensable. Again, it's the same thing with Gross. It's a coal mining case, another smoking case. He was a smoker. He was a coal miner. Both could have caused it. The Commission decided to go with one and ignore the other. And again, this court reversed. So to here, it comes down to the language of the arbitrators for the Commission's decision. What the arbitrator says is that the mechanism of injury is not credible and that, therefore, there was no injury to the knee. Now, there's two ways we can read that. When they say mechanism of injury is not credible, they might be referring to both impacts, in which case the claim that there's no injury to the knee is not just against the manifest way of the evidence. It's bizarre, subjective medical records that there was something wrong with her knee. Or it would be to me that they were only referring to the first impact and ignoring the second, in which case the alternative, this court should remand the case back to the Commission for findings of fact with regards to the second cause to the fact. But, counsel, isn't that contrary to what the actual findings were? I'm looking at the arbitrator's findings that say there was no injury to the knee. Precisely. That's what they found. But, again, it's against the manifest way of the evidence. I mean, even if the arbitrator doesn't say there was no injury, he's disputing the causation of the injury, but there clearly was an injury. So if we read that in isolation, it means that what it says, there was no injury, that's manifestly against the manifest way of the evidence because we clearly have a knee injury in this case. If they're instead saying to me that there was no injury from the first impact, then that's fine as far as it goes, but it doesn't address the second impact. So, again, we either get a case where the Commission made a decision that is against the manifest way of the evidence or it's a case where the Commission simply failed to address the second cause to the fact or that second. Well, the evidence of the fall was before the Commission, correct? Yes, Your Honor. It also formed an essential part of Kummel's opinion, didn't it? It did. Okay. So the Commission obviously heard the evidence and was aware of it. Yes. Okay. So, obviously, they're finding it for the Commission did not believe Clayman's fall theory persuasive. They didn't find it persuasive. Well, in that case, they exceeded their authority because there's no contrary evidence in the record that the plaintiff's fall didn't happen. Well, what about the visit to Dr. Mitchell where there was no report of any accident or incident? Well, Your Honor, is that consistent or inconsistent with the arbitrator and the Commission's final claim? I mean, it's not inconsistent. But, again, I don't think it's enough affirmative evidence to lay the claim, lay the foundation for a decision that the fall, the second impact was possibly unrelated to the injury. You'll have time to respond. Thank you. Thank you. Counsel? Yes. Deans Wineson on behalf of K-5, the respondent in this case. You seem to recall all my main bases in this case already. Where this case went south for the petitioner during her testimony was she stuck to the story that she gave to all of the doctors, except for Dr. Charlotte Mitchell, the first person she saw that she gave no history of a work-related accident, that the piece of asphalt that went airborne struck her in the middle part of the left knee. The petitioner, and I can see the arbitrator, I guess, focusing in when she rolled up her leg and she kept pointing to her knee and she pointed to the spot where she was hit. We'd already taken Sandra Hackney, the eyewitness's testimony, and she clearly said that it happened at the shin. Later on in cross-examination, I questioned her vigorously on it, and she admitted, yeah, I got hit on the shin. She goes, do you know the difference between your shin and your knee? Yes, I do not, was her response to it. Well, the Illinois Workers' Compensation Commission affirmed the decision of the arbitrator. They found that her testimony regarding the mechanism of injury was not credible. Nobody was hiding the fact that she fell after she got struck. Whenever she got struck, she went to the ground. The conclusion of the commission was that there was no injury to the left knee on September 16, 2013. What do you make of the delay in four months before any medical treatment? I think she waited until the end of the season, until the seasonal layoff in December. She went to see the doctor. She gave no history. She was having pain. She was 64 years old. She'd been working in the construction trade for many years, and she had pain in her knee. She'd been a runner. She'd been a runner for years. I think it was just, I agree with what the commission found, that Dr. Schmeltz's opinion that it was a degenerative condition. Her knee was causing pain. She was retiring. It was not in the knee. She went to Dr. Schmeltz. So you seem to be dancing around the issue. Are you suggesting the commission felt that she really wasn't struck in the knee, but now that she's got a knee problem, the situs of the injury moved up a little bit? Does that seem to be the underlying premise here? I think that's what the petitioner's, yeah, I think the petitioner's focus was on the strike point. The petitioner's focus at trial and with the history that she gave to three of the four doctors that she gave histories to, well, she gave no history to Dr. Mitchell, but was the strike point. And she said the strike point was the middle of the left knee. And clearly the commission found that that wasn't the case. Did she acknowledge on cross that there was a big knot that it appeared to be an injury to the shin? Did she acknowledge that? It says something in the record about a knot. She acknowledged it was a knot on her shin. She had a big black and blue knot on her shin, and she did acknowledge that on cross-examination. Dr. Schmeltz, I think the commission also found, and again, this is a manifest way case. The commission is supposed to be the deferential consideration of their opinions. Their decision is supposed to, you know, hold the weight. They found Dr. Schmeltz and Dr. Mel were not as persuasive as the medical opinion regarding causal connection of Dr. Levin. Dr. Levin found the condition to be that of degenerative and not traumatic chondromalacia. Council mentioned page 21 of the deposition of Dr. Schmeltz. The only doctor who seemed to focus on the fall as the legitimate mechanism of injury causally connected to her condition, which required the arthroscopic procedure. Dr. Schmeltz actually didn't get it as good as she felt to her knee. He didn't know how she felt. On page 21 of the deposition, he assumed, I asked him how she felt. Did she fall backwards, forward, or sideways? He assumed that she got hit, that the asphalt came from behind and strutted to the back of her left knee. So, you know, in conclusion, I would ask that, or I would respectfully request that this honorable panel affirm the decision of the Illinois Workers' Compensation Commission. There was sufficient evidence of record, although there are conflicting medical records, to support the decision of the commission. There's sufficient evidence and facts for this tribunal to make a meaningful judicial review. Any questions? Thank you. Thank you, counsel. Counsel, you may reply. Thank you, Your Honor. I just have a brief point on the rebuttal. The reason this court does not have to defer this to the commission's decision to assign greater weight to Dr. Levin than to Drs. Schmeltz and Mel is because that decision was premised upon an understanding of the incident that we've already been back and forth on, that the commission itself determined was false. Namely, Dr. Levin's full opinion is premised upon a strident piece of asphalt to the back of the knee, something which the commission itself determined did not have. Secondly, Dr. Levin's opinion expresses no opinion on the exacerbation of an existing degenerative condition by the traumatic event. The only doctor's opinion upon that is Dr. Schmeltz. And then thirdly, if you read Dr. Levin's testimony carefully, you see that he's not even really using the correct evidentiary standard here. If you look at page 63 of his deposition, when he's asked about his certainty as to whether the condition was degenerative rather than traumatic, he says, quote, one could not definitely say with 100% medical and surgical certainty that this was definitely caused by a post-traumatic condition. That's not the standard. The standard is reasonable degree of medical certainty, not 100% certainty. So for these reasons, the Court does not have to defer to the commission's decision to weight one doctor over another because he used those opinions improperly. And therefore, this Court should either reverse or remand. Thank you very much. Thank you, counsel. Thank you, counsel, both for your arguments in this matter. If we take member advisement in a written disposition, shall issue the court's plan of recess until 1-30 this afternoon. Thank you, Your Honor. Thank you.